VALKYRIE LAW GROUP, P.C.
HEATHER L. BLAISE, ESQ. (SBN 261619)
1 N. State Street, Suite 1500
Chicago, IL 60602
Telephone: 312-448-6602
Email: hblaise@valklaw.com

Attorneys for Plaintiff,
MATTHEW MICHAEL HOBBS

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MATTHEW MICHAEL HOBBS, an individual,<br><br>Plaintiff,<br>v.<br><br>THE KROGER CO., an Ohio corporation,<br><br>Defendant. | CASE NO: ______________________<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff MATTHEW MICHAEL HOBBS, an individual ("Hobbs"), by and through his attorneys, Valkyrie Law Group, P.C., as and for his Complaint for Copyright Infringement against Defendant THE KROGER CO., an Ohio corporation ("Defendant"), states as follows:

## NATURE OF THE ACTION

1. This is an action to stop Defendant's rampant infringement of Hobbs' copyrighted works, both entitled "Cheese Tax" including the sound recording and the underlying musical composition (hereinafter collectively referred to as the "Works"), for commercial gain on its social media pages, and to recover damages for Defendant's willful conduct.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338 (federal question).

3. This Court has personal jurisdiction over Defendant in that, among other things, Defendant does business in this Judicial District, and Plaintiff does business and is suffering harm in this Judicial District.

4. Venue is proper in this Judicial district pursuant to 28 U.S.C. §§ 1391(b)-(d) and 1400(a).

## THE PARTIES

5. Plaintiff MATTHEW MICHAEL HOBBS ("Plaintiff," "Hobbs"), is an individual and citizen of Georgia, domiciled in Tucker, Georgia.

6. Plaintiff is an award-winning songwriter, multi-instrumentalist, vocalist, and producer, and is famous as the creator of Puppy Songs.

7. Puppy Songs is a collection of nearly 200 original songs that tell stories about life with a dog, including dozens of viral hits such as "Big Stretch," "When Mom Comes Home," "Stuck on My Teefs," and the global mega-hit "Cheese Tax."

8. Plaintiff has an extensive background in advertising with experience collaborating with brands and agency teams, and recently collaborated with brands such as BarkBox, Purina, Petco, DoorDash, and Earth Rated.

9. Defendant THE KROGER CO. ("Defendant," "Kroger") is an Ohio corporation with its headquarters located at 1014 Vine Street, Cincinnati, Ohio 45202.

10. Defendant is one of the largest supermarket operators in the United States and, upon information and belief, operates grocery stores throughout this Judicial District, including stores under the Ralphs and Food 4 Less banners.

11. Defendant operates an extensive social media presence to market its stores, brands, and products, with millions of followers across multiple social media platforms and accounts, including followers and consumers in this Judicial District.

12. Defendant is responsible for the content posted to its official social media

accounts.

13. Defendant operates a social media page through the TikTok platform including the TikTok handle @kroger.

14. TikTok, Inc. is a California corporation, and has its principal place of business in Culver City, California.

15. Defendant knew that the impact of its use of the TikTok platform would therefore be aimed at the Central District of California, as the TikTok platform and the company that owns it are located in the forum.

16. Further, Defendant knew that its marketing campaign on the TikTok platform would reach consumers in the Central District of California.

## FACTS RELEVANT TO ALL COUNTS

### A. TikTok

17. TikTok is a social media and entertainment platform that allows users to view, create, and share short videos.

18. The TikTok App is one of the world's most popular social media platforms, with nearly 1.6 billion monthly active users across the globe.

19. TikTok users can publish videos for others' viewing, including videos that they make themselves, and can apply filters and visual effects using the app's technology.

20. TikTok also displays a curated feed of video content based on the users' viewing preferences, as well as advertisements.

21. Users who create accounts are given personal profile pages that display their username and posted content.

22. While TikTok's primary function involves video creation and viewing, it also contains a custom "in-app browser" that enables users to view external websites.

23. TikTok directs users to these third-party websites in several different ways: 1) presents users with video ads in their feeds that include links to an advertised product or service's website; and 2) users who have at least 1,000 followers can add

links to external websites on their personal profiles, a feature that influencers, businesses, and organizations routinely use to direct viewers to their brands and products.

24. When users tap on these ads or links while using the TikTok, the in-app browser opens these links internally within the TikTok App instead of transferring them to a separate web browser on the user's device such as Google Chrome or Safari.

25. When users create videos on TikTok, they have the ability to add recommended music through the in-app music library, which includes trending audio clips.

26. TikTok trends are viral phenomena that spread across the TikTok platform, driven by user participation in challenges, hashtags, dance routines, memes, or audio clips.

27. These trends often begin with individual creators who upload content featuring a particular theme, concept, or challenge.

28. As users discover these posts, they may replicate or remix the content, making it their own by adding personal twists.

29. The spread of these trends is facilitated by TikTok's algorithm, which prioritizes content based on engagement metrics (e.g., likes, comments, shares, and watch time).

30. The more engaging the content, the more likely it is to appear on a user's "For You" page, thus reaching a broader audience.

31. This creates a snowball effect, where trends quickly gain momentum and visibility across the platform.

32. Corporations, like Defendant here, seeking to capitalize on the popularity of trends, may participate in these viral challenges or meme formats by incorporating third-party copyrighted works into their videos.

33. TikTok trends frequently revolve around popular songs or audio clips, which may be copyrighted.

34. TikTok provides a commercial library for corporations to use without obtaining additional licenses from rightsholders.

35. The terms of TikTok's commercial library are as follows:

• These "Commercial Music Library Terms" (the "Terms") apply to the use of sounds (music and non-music) selected from TikTok's "Commercial Music Library" (the "CML"), whether via the TikTok mobile app, web application or TikTok Creative Center website. Sounds selected from the CML will be referred to in these Terms as "Commercial Sounds".

• In addition to the CML being accessible by individual users, the CML and Commercial Sounds are also made available to brands, businesses, commercial entities and advertisers (collectively, "Business Users") for inclusion in videos for posting on TikTok, which may include, but not be limited to the following types of uses: • The association of a Commercial Sound with a brand, logo or trademark or other brand identifying characteristics. • Advertising, marketing, endorsing, sponsoring or publicizing (including so-called paid "hashtag challenges") a product and/or service on TikTok.

These types of uses will be referred to as "Commercial Uses".

If you engage in Commercial Uses, you acknowledge and agree to the following terms:

• You may only post or share videos that include Commercial Sounds within TikTok and by using the sharing features made available to TikTok users. Commercial Uses outside of TikTok are not permitted and no rights are granted by TikTok for such uses. Any uses outside of TikTok are subject to you obtaining separate permission and licensing the necessary rights directly from the Commercial Sound rights holder(s). These types of outside uses include, but are not limited to,

posting videos on third party digital platforms and inclusion of Commercial Sounds in audio or audiovisual content on television, radio and in theatrical media.

• You are not permitted to make available, distribute, or perform the Commercial Sounds separately from the videos into which you have incorporated the Commercial Sound.

• You are not permitted to use Commercial Sounds in an illegal manner or in any way that violates the rights of third parties, or in connection with any content that is illegal or otherwise violates TikTok's "Terms of Service" (including any associated "Community Guidelines"). In addition, some of the Commercial Sounds may be subject to additional requirements and/or restrictions, as further specified in the CML. You agree to comply with these additional requirements when you use Commercial Sounds.

• Commercial Sounds are the only sounds made available on TikTok for Commercial Uses. Otherwise, no rights are granted to make Commercial Uses of any other sounds (music and non-music) on or through TikTok.

• Commercial Sounds designated as "Premium" ("Premium Tracks") may be subject to an additional fee for their use. The exact amount may vary and the calculation of any associated fee for use of a Premium Track will be displayed at the time you purchase the applicable ad inventory. Except as described in this paragraph, all other terms and conditions applicable to Commercial Sounds also apply to Premium Tracks.

• With respect to Commercial Uses by Business Users, each such Business User hereby grants to TikTok and its affiliates the right to provide data reporting to the rights holders of the Commercial Sounds

used by the Business User in each instance. This data may include the number of views, creations, likes, followers, Business User platform account name, country of the Business User's home offices and industry in which the Business User operates, the campaign name(s) and Business User's targeted audience data, which may include, but may not be limited to, gender, personal interests and geo-location. Any data shared by TikTok pursuant to this paragraph will at all times be subject to all applicable privacy and data sharing laws and regulations.

• You (including Business Users) are responsible for any claims and disputes that arise from (i) your failure to adhere to and abide by these Terms, the "TikTok for Business Commercial Terms of Service" or TikTok's "Terms of Service"; (ii) your unauthorized use of Commercial Sounds (wherever or however accessed); and (iii) your unauthorized, unlicensed use of sounds contained in the non-commercial "General Music Library" made available to personal users of TikTok. In the event of any such claim, including any complaint, investigation, dispute, litigation or arbitration brought against TikTok and/or its affiliates, you shall indemnify and hold harmless TikTok and its affiliates from and against each such claim.

• If you access the CML or Commercial Sounds through the TikTok Creative Center web portal (and not via the TikTok mobile application), you must pay attention and adhere to the "Usable Placements" designation with respect to each Commercial Sound in order to select the appropriate Commercial Sound for your planned use. Commercial Sounds may only be used on designated platforms, which are listed in the "Usable Placements" section of the web portal version of the CML. To use Commercial Sounds in videos on media or platforms other than the platforms listed under "Usable Placements", you must obtain

separate permission from the rights holders, and you are responsible for such permissions and any associated license fees. Any platform not designated under the "Usable Placements" section should be considered not permitted for use of the Commercial Sound in question unless you first obtain the required consents and approvals from the applicable rights holder(s).

• If TikTok, at any time, loses the right, for any reason, to make available a particular sound that was previously available as a Commercial Sound in the CML, TikTok, in its sole discretion, may take down any videos (or any other associated audiovisual content) embodying the Commercial Sound in question or mute the audio so that the Commercial Sound is no longer audible when the video is played. TikTok has no liability to you or any third party with respect to the loss of rights associated with a particular Commercial Sound (and its removal from the CML), or the resulting take down or muting of videos embodying such Commercial Sound.

Commercial Music Library – User Terms, TIKTOK (2026), https://www.tiktok.com/legal/page/global/commercial-music-library-user-terms/en (last visited Oct. 12, 2026).

36. While TikTok provides its Commercial Music Library for users to select from, corporations often bypass proper licensing arrangements by using unlicensed copyrighted audio in their commercial videos.

37. In repurposing user-generated content and/or influencer videos that feature copyrighted works, corporations often exploit content without obtaining the necessary rights to use such content.

38. TikTok's Music Terms of Service provides in pertinent part:

TikTok offers its users a library of licensed music from which songs may be selected for inclusion in videos. If you include in your video a song that was not chosen from the licensed library, then you confirm

that you are the creator of that music and/or that you have all the rights and permissions needed to use that music in your video. Except as expressly set out in these Music Terms, you acknowledge that no rights in the music—either in the sound recordings or the underlying compositions embodied in them—are licensed to you under the TikTok Terms of Service or these Music Terms.

[…]

Below we describe some ways that you may choose to include music in your videos. In short, you should only include music in a video if you are sure that you have the rights or permissions to do so.

• Select audio from the general music library. When you upload your video content to TikTok, you can select music from a list of music recordings in our TikTok music library, which we call Sounds. Sounds are made available to individual users to include in their videos, so long as the videos are only for personal entertainment and non-commercial purposes. You shouldn't use a music recording from Sounds for any commercial purpose–including associating the music with, or promoting, a brand or business–unless you have obtained the necessary rights to use the music in that manner.

• Select audio from the commercial music library. You can also select music from the TikTok Commercial Music Library, which we call Commercial Sounds. Unlike Sounds, Commercial Sounds are made available to brands, businesses, commercial entities, advertisers or other Platform users (including individuals) that may be using the Platform for commercial purposes (collectively defined as a "Commercial User"). Music recordings selected from the Commercial Music Library can be used to promote a brand or for other commercial purposes. Your use of the Commercial Sounds is governed by the

Commercial Music Library Terms here.

• Upload your own music. Finally, you can also upload audio from your own personal device, such as audio that contains music we've licensed for use on the Platform or your own original work, by including such music directly in your TikTok video ("Original Sounds"). Your use of Original Sounds is governed by the TikTok Terms of Service. **If you're a Commercial User, you should not use an Original Sound uploaded by another user. If you're a Commercial User and you upload an Original Sound to your video, you confirm that (i) you own all the rights to the music included in the video; or (ii) the music is otherwise permitted by law; or (iii) you have permission from all necessary rights holders to use the Original Sound on the Platform.**

[…]

Music is part of the TikTok experience. But, to use music on our Platform, you must follow a few rules.

• Non-commercial uses. Unless you've selected a sound from our list of Commercial Sounds, music should only be used for personal, non-commercial purposes. Any other use of music to sponsor, promote, co-brand or advertise or in a way that creates an association between the music and a brand, product, good or service is prohibited unless you have obtained separate permissions and all necessary rights.

• Short-form uses. Our global music license agreements may require us to place limits on the duration of music that can be used in your video. While specific limitations vary, uses of music up to one minute in length are generally permitted.

• No alterations or modifications. You can not edit or alter the fundamental character of any copyrighted music, unless you created the

> underlying music or otherwise have the rights or permissions to do so.
>
> • No stand-alone audio. You should not use music separately as stand-alone audio without an accompanying video.
>
> • No illegal uses. Don't use music in an illegal manner, in connection with illegal content, or in violation of our Community Guidelines. In addition, music shouldn't be used in a political context or for political purposes unless you have separately obtained permission from all of the rights holders to do so.
>
> • Sharing videos on third-party platforms. In some cases, you may be able to share TikTok videos to third-party platforms through our service. If you do share your TikTok video to a third-party platform, your TikTok video would be subject to the terms and conditions of that third-party platform.

Music Terms of Service, TIKTOK (2025) https://www.tiktok.com/legal/page/global/music-terms-eea/en (last visited Oct. 12, 2026) (emphasis added).

39. Defendant is a Commercial User under the terms of the TikTok Music Terms of Service and was on notice that it was not entitled to use any TikTok Original Sound without first obtaining permission from all necessary rights holders.

**B. The Works**

40. The song entitled "Cheese Tax" is a sound recording and a musical composition including lyrics and music created by Plaintiff that was first published on February 28, 2023 (collectively referred to as the "Works").

41. The Works were registered with the U.S. Copyright Office on March 13, 2023, Registration No. SR 973-739. *See* **Exhibit A**, Registration.

42. Because the Works were registered within three months after their first publication, Plaintiff is entitled to an award of statutory damages and attorneys' fees for any infringement of the Works commenced after their first publication and before the effective date of their registration. *See* 17 U.S.C. § 412(2).

43. The Works are not, and have never been, available in TikTok's Commercial Music Library, and Plaintiff has never authorized the inclusion of the Works in the Commercial Music Library or otherwise licensed the Works for commercial use on TikTok.

44. Following Plaintiff's first publication of the Works on Plaintiff's @puppysongs profile on the TikTok platform, the song became viral and Plaintiff received thousands of notifications daily of comments, likes, shares, tags, etc.

45. Furthermore, "Cheese Tax" was used in tens of thousands of user-created posts because of its popularity.

46. Plaintiff published the Works on TikTok as an "original sound" on Plaintiff's @puppysongs profile. Under TikTok's Music Terms of Service, a Commercial User "should not use an Original Sound uploaded by another user."

47. Plaintiff has commercially licensed the Works to brands in exchange for license fees through separately negotiated agreements.

**C. Defendant's Infringing Video**

48. On March 10, 2023, Defendant posted a video on its commercial TikTok page, @kroger, which included the Works as its audio (the "Video"). *See* https://www.tiktok.com/@kroger/video/7208940563586895146.

49. Defendant posted the Video on its commercial TikTok account to advertise and promote Defendant, its brand, and its stores and products.

50. The Video received at least 6,231 views on TikTok.

51. The audio for the Video was the song entitled "Cheese Tax," taken from the original sound uploaded by Plaintiff's TikTok handle @puppysongs, which is not, and has never been, available in TikTok's Commercial Music Library.

52. Rather than select a Commercial Sound from TikTok's Commercial Music Library or obtain a license from Plaintiff, Defendant, a Commercial User, used an Original Sound uploaded by another user, which TikTok's Music Terms of Service expressly prohibit.

53. Defendant posted the Video on March 10, 2023, just ten days after the Works were first published and while the Works were rapidly gaining viral popularity on TikTok, in order to capitalize on that popularity for Defendant's commercial benefit.

54. Defendant willfully and knowingly infringed the Works in the Video.

55. Defendant did not obtain any license or authority by Plaintiff to use the Works in the Video posted on Defendant's commercial TikTok page described above.

56. In order to synchronize the Works to an audiovisual work in the manner that Defendant has so done, Defendant would have needed both a synchronization license for the musical composition and a master use license for the sound recording without infringing Plaintiff's exclusive rights, including derivative work; public display; performance; reproduction; and distribution rights.

**D. Defendant's Intentional Infringement**

57. As the owner of the Copyright rights under 17 U.S.C. §106, Plaintiff has the exclusive right to: Make Copies (17 U.S.C. §106 (1) to reproduce the copyrighted work in copies or phonorecords); Create Derivative Works (17 U.S.C. §106(2) to prepare derivative works based upon the copyrighted work;); Distribute (17 U.S.C. §106(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending); Perform the Works Publicly (17 U.S.C. §106) (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;); and Display the Works Publicly (17 U.S.C. §106(5)) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly).

58. Plaintiff discovered the Video on or about December 2, 2025.

59. Prior to December 2, 2025, Plaintiff did not know and had no reason to know of Defendant's infringement in the Video.

60. On March 11, 2026, Plaintiff, through his authorized representatives, sent Defendant written notice of its infringing use of the Works in the Video, informing Defendant that Plaintiff did not authorize or license Defendant's non-personal and commercial use of the Works as part of the Video, and demanding that Defendant cease and desist from further use of the Works.

61. In response, Defendant asserted that the Works were available for use by TikTok business account holders at the time Defendant posted the Video. That assertion is false. The Works were not, at any time, included in TikTok's Commercial Music Library.

62. Plaintiff's representatives thereafter provided Defendant with documentation showing that the audio used in the Video was Plaintiff's user-uploaded original sound, and not a Commercial Sound made available for commercial use.

63. Defendant removed the Video from the TikTok platform on or about April 23, 2026.

64. Prior to its removal, the Video remained publicly available on Defendant's commercial TikTok page for more than three years, during which time Defendant publicly displayed and performed the Works for its commercial benefit without any license or authorization from Plaintiff.

65. Each day the Video remained publicly available on Defendant's commercial TikTok page constituted a separate act of infringement, including acts of infringement occurring within the three years preceding the filing of this Complaint.

66. To date, Defendant has not compensated Plaintiff for its unauthorized use of the Works.

## COUNT I

## DIRECT COPYRIGHT INFRINGEMENT AS TO THE USE OF THE SOUND RECORDING

67. Plaintiff incorporates the preceding Paragraphs 1 through 66 of this Complaint as if fully set forth herein.

68. The sound recording embodied in the Works (hereinafter "Sound Recording") is owned and/or controlled by Plaintiff and is an original, creative work and constitute copyrightable subject matter under the Copyright Act.

69. Plaintiff owned and controlled the copyright to the Sound Recording during the relevant times of Defendant's infringement.

70. Defendant had access to but was not licensed by Plaintiff to use Plaintiff's Sound Recording in the manner Defendant has used the Works.

71. By its actions, Defendant's creation, posting, and distribution of the Video infringes Plaintiff's copyright because Defendant: 1) reproduced the Sound Recording in violation of 17 U.S.C. § 106(1); 2) prepared derivative works based upon the Sound Recording in violation of 17 U.S.C. § 106(2); 3) distributed copies of the Sound Recording to the public by sale or other transfer of ownership, or by rental, lease, or lending in violation of 17 U.S.C. § 106(3); and 4) performed the Sound Recording publicly in violation of 17 U.S.C. § 106(4).

72. Through these unauthorized uses, Defendant has unlawfully reproduced, prepared a derivative work, distributed, and/or publicly performed the Sound Recording in violation of 17 U.S.C. § 106 without any authorization, permission, license, or consent from Plaintiff.

73. Defendant's acts of infringement are knowing, deliberate, and in complete disregard for Plaintiff's rights.

74. Defendant's conduct constitutes willful copyright infringement under 17 U.S.C. § 504(c)(2).

75. As a direct and proximate result of Defendant's infringement of Plaintiff's copyright and exclusive rights under copyright, Plaintiff is entitled to statutory damages, or his actual damages, at his election, including Defendant's profits directly and indirectly attributable to the infringement, at Plaintiff's election, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b), or, *in the alternative*, at Plaintiff's election pursuant to 17 U.S.C. § 504(c), to statutory damages up to the amount of

$150,000.00 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c), including attorneys' fees and costs, including expert fees.

76. Plaintiff is also entitled to enhanced statutory damages as Defendant was either actually aware that it did not have the right to use the Sound Recording based on TikTok's Terms of Service and the fact that it did not hold a single license from Plaintiff; or Defendant's actions were the result of reckless disregard for, or willful blindness to, Plaintiff's rights.

77. Plaintiff is irreparably harmed by the acts alleged herein and has no adequate remedy at law.

**PRAYER FOR RELIEF AS TO COUNT I**

WHEREFORE, Plaintiff prays for judgment from this Honorable Court in Plaintiff's favor against Defendant:

a) A declaration that Defendant's March 17, 2023 TikTok post has willfully infringed Plaintiff's copyrighted Sound Recording in violation of the Copyright Act;

b) A permanent injunction requiring Defendant and its agents, employees, officers, attorneys, successors, licensees, partners and assignees, and all persons acting in concert with any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of Plaintiff's rights protected by the Copyright Act pursuant to 17 U.S.C. § 502;

c) An order for impoundment of all copies made or used in violation of the exclusive rights of Plaintiff pursuant to 17 U.S.C. § 503;

d) An order impounding records documenting the manufacture, sale, or receipt of things involved in the acts of infringement pursuant to 17 U.S.C. § 503;

e) For statutory damages pursuant to 17 U.S.C. § 504(c) for Defendant's

willful infringement to the greatest extent provided by the Copyright Act, or, *in the alternative*, at Plaintiff's election, Plaintiff's actual damages and Defendant's profits attributable to the infringement pursuant to 17 U.S.C. § 504(b), at Plaintiff's election, in an amount to be proven at trial;

f) An order for an accounting and an award of Defendant's profits (including direct and indirect profits) pursuant to 17 U.S.C. § 504;

g) Enhanced statutory damages for willful infringement under 17 U.S.C. § 504(c)(2);

h) A judgment against Defendant awarding Plaintiff's his attorneys' fees and costs;

i) For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Defendant; and

j) Any and all relief deemed just and appropriate by the Court.

## COUNT II

## DIRECT COPYRIGHT INFRINGEMENT AS TO THE USE OF THE MUSICAL COMPOSITION

78. Plaintiff incorporates the preceding Paragraphs 1 through 66 of this Complaint as if fully set forth herein.

79. The musical composition embodied in the Works (hereinafter "Musical Composition") is owned and/or controlled by Plaintiff and is an original, creative work and constitute copyrightable subject matter under the Copyright Act.

80. Plaintiff owned and controlled the copyright to the Musical Composition during the relevant times of Defendant's infringements.

81. Defendant had access to but was not licensed by Plaintiff to use Plaintiff's Musical Composition in the manner Defendant has used the Works.

82. By its actions, Defendant's creation, posting, and distribution of the Video infringes Plaintiff's copyright because Defendant: 1) reproduced the Musical Composition in violation of 17 U.S.C. § 106(1); 2) prepared derivative works based

upon the Musical Composition in violation of 17 U.S.C. § 106(2); 3) distributed copies of the Musical Composition to the public by sale or other transfer of ownership, or by rental, lease, or lending in violation of 17 U.S.C. § 106(3); 4) performed the Musical Composition publicly in violation of 17 U.S.C. § 106(4); and/or 5) have displayed the Musical Composition publicly in violation of 17 U.S.C. § 106(5).

83. Through these unauthorized uses, Defendant has unlawfully reproduced, prepared a derivative work, distributed, publicly performed, and/or publicly displayed the Musical Composition in violation of 17 U.S.C. § 106 without any authorization, permission, license, or consent from Plaintiff.

84. Defendant's acts of infringement are knowing, deliberate, and in complete disregard for Plaintiff's rights.

85. Defendant's conduct constitutes willful copyright infringement under 17 U.S.C. § 504(c)(2).

86. As a direct and proximate result of Defendant's infringement of Plaintiff's copyright and exclusive rights under copyright, Plaintiff is entitled to statutory damages, or his actual damages, at his election, including Defendant's profits directly and indirectly attributable to the infringement, at Plaintiff's election, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b), or, *in the alternative*, at Plaintiff's election pursuant to 17 U.S.C. § 504(c), to statutory damages up to the amount of $150,000.00 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c), including attorneys' fees and costs, including expert fees.

87. Plaintiff is also entitled to enhanced statutory damages as Defendant was either actually aware that it did not have the right to use the Musical Composition based on TikTok's Terms of Service and the fact that it did not hold a single license from Plaintiff; or Defendant's actions were the result of reckless disregard for, or willful blindness to, Plaintiff's rights.

88. Plaintiff is irreparably harmed by the acts alleged herein and has no adequate remedy at law.

## PRAYER FOR RELIEF AS TO COUNT II

WHEREFORE, Plaintiff prays for judgment from this Honorable Court in Plaintiff's favor against Defendant:

a) A declaration that Defendant's March 17, 2023 TikTok post has willfully infringed Plaintiff's copyrighted Musical Composition in violation of the Copyright Act;

b) A permanent injunction requiring Defendant and its agents, employees, officers, attorneys, successors, licensees, partners and assignees, and all persons acting in concert with any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of Plaintiff's rights protected by the Copyright Act pursuant to 17 U.S.C. § 502;

c) An order for impoundment of all copies made or used in violation of the exclusive rights of Plaintiff pursuant to 17 U.S.C. § 503;

d) An order impounding records documenting the manufacture, sale, or receipt of things involved in the acts of infringement pursuant to 17 U.S.C. § 503;

e) For statutory damages pursuant to 17 U.S.C. § 504(c) for Defendant's willful infringement to the greatest extent provided by the Copyright Act, or, *in the alternative*, at Plaintiff's election, Plaintiff's actual damages and Defendant's profits attributable to the infringement pursuant to 17 U.S.C. § 504(b), at Plaintiff's election, in an amount to be proven at trial;

f) An order for an accounting and an award of Defendant's profits (including direct and indirect profits) pursuant to 17 U.S.C. § 504;

g) Enhanced statutory damages for willful infringement under 17 U.S.C. § 504(c)(2);

h) A judgment against Defendant awarding Plaintiff his attorneys' fees and

costs;

i) For pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Defendant; and

j) Any and all relief deemed just and appropriate by the Court.

**JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

DATED: October 19, 2026

Respectfully submitted,

**MATTHEW MICHAEL HOBBS**

*/s/ Heather L. Blaise*

HEATHER L. BLAISE, ESQ. (SBN 261619)

*Attorney for Plaintiff*